## ROBERT VALENTINE *v*. THE STATE.

1. CHANGE OF VENUE — EVIDENCE. — The defendant pleaded to the jurisdiction of K. County District Court, upon the ground that the transcript from M. County did not show that a change of venue had been duly ordered, and the State proposed to prove that fact by parol testimony. *Held*, that the record of the judgment is the best evidence, and until it is shown that such evidence cannot be had, secondary evidence cannot be resorted to.

2. SAME. — The judge of the District Court trying an offence is a competent witness, either for the State or the defendant; but, like other witnesses, he must be sworn. In his discretion, however, he may postpone the case, to be tried before some other judge.

3. PRACTICE. — If it appears that motions for new trial and in arrest of judgment were filed more than two days after verdict, and no sufficient excuse is shown for the delay, they will not be considered by this court on appeal.

APPEAL from the District Court of Kinney. Tried below before the Hon. T. M. PASCHAL.

The appellant was indicted by the grand jury of Maverick County, for the murder of Michael Schultz. He was convicted of murder in the second degree, and given ten years in the penitentiary.

The testimony for the State discloses that both the defendant and the deceased were United States soldiers, members of the same command, and two of a scouting party sent out from Fort Duncan, Texas, on or about the seventh day of October, 1876. The party got off the main road, and went into camp in an obscure place. The deceased was sent back on the trail, by the sergeant in command, to pilot the wagon into camp. The defendant approached the sergeant after deceased had been sent back, and told him that deceased was not a proper person to be sent back for the wagon, — that " the d—d fool would get lost." Defendant then went back on the trail, without having been ordered, and presently some seven or eight shots were fired from the direction in which the parties went, the balls coming into the camp. The sergeant in command despatched a subordinate officer, with a detail of

four men, to discover the cause of the shooting, and to arrest and bring the parties into camp. The party met the defendant, who was leading his own and the deceased's horse, and had his own and the deceased's pistol. His own pistol had been discharged all round, and four shots had been fired from deceased's pistol. A few feet off, the party found the deceased, shot in two places, — from front to back, — but not dead.

Deceased was carried into camp, and, when asked who shot him, in the presence of the defendant, said it was the defendant; to which accusation the defendant made no reply. When defendant was asked, before his arrest, why he had killed deceased, he denied, to one witness, having killed him, and accused a Mexican; and to another he said that he would "kill any d—d man who raised his hand" against him. The defendant was shown by the prosecution to have been drinking, and that bad feeling had previously existed between him and the deceased.

It was shown by one witness, — who, when the detail was ordered for the scout, was sent to hunt for the defendant, — that when he found him, and told him that he was wanted to go with the party, defendant asked him if deceased was one of the detail; that, being informed that he was, defendant said, "God d—n Schultz! I'll kill him before night!" This witness advised defendant to have no trouble with deceased; but received the reply that "that was defendant's business, and not the business of witness."

An effort was made, upon the cross-examination of these witnesses, to show that the surgeon who attended upon the deceased probed the wounds while drunk; but the day-nurse at the hospital testified that the wounds were not probed by the surgeon in his presence, and evidence to the same effect was given by the night-nurse. The latter testified that the surgeon had been cashiered and dismissed the service for drunkenness when treating this case, and for malpractice.

It was also shown by the last witness, — the night-nurse, — that twice before his death, and on the night that he died, the deceased voluntarily, and without being questioned, and conscious and certain of approaching dissolution, gave to witness and another an account of the shooting. His statement was, in effect, that, when coming together, he and defendant went up to the Stone Ranch, near where he was shot. Deceased tried to get defendant to go back to camp, which he declined to do unless he (deceased) would give him his pistol. Deceased gave him his pistol, to humor him, and defendant then ordered him to get down and lead the way down the hill. He (deceased) started down in front, and, almost immediately, defendant said : " Now, God d—n you, I have got the drop on you," and shot him. It was testified that the deceased received close and careful attention at the hospital, and that he died from the wounds.

For the defence, it was shown by a female witness that, during the fall of 1876, defendant and deceased visited her very often, — and generally in company, — and that they appeared to be good friends. Cross-examined, she said that defendant visited her sometimes when he was drinking, and on such occasions would frequently swear and get boisterous. On one occasion, when leaving the house, with deceased and another man, he discharged his pistol behind deceased, but was prevailed upon to put it up and go on.

Capt. Fletcher, for the defence, testified that he had only known the defendant since his arrest for this killing, — about a year. He was under arrest for that length of time at Fort Clark, and enjoyed the exceptional confidence of the officers of the post. He had the freedom of the post, and could have effected his escape at almost any time during that period.

No brief for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State.

White, J.    Appellant was indicted on the sixteenth day of November, 1876, by the grand jury of Maverick County, for murder committed by him upon one Michael Schultz, in said Maverick County, on the seventh day of October, 1876. On the third day of May, 1879, he was brought to trial in the District Court of Kinney County, and the trial resulted in his conviction of murder in the second degree, with his punishment assessed at confinement in the State penitentiary for a term of ten years.

When defendant was arraigned and called upon to plead to the indictment, he stood mute, and the court, over his objections, caused a plea of not guilty to be entered for him.    Defendant also filed a sworn plea to the jurisdiction of the court.    His refusal to plead was based upon the ground that the District Court of Kinney County had no jurisdiction to try the cause, there being of record no transcript showing any order of court changing the venue from Maverick to Kinney County.    This was also the substance of his special plea to the jurisdiction.

Two of defendant's bills of exception, found in the transcript before us, further disclose the questions which were raised and the proceedings had with regard to the matters of venue and jurisdiction.    The first is as follows, viz. : " Be it remembered, that on the trial of this cause, and after the prosecution had closed, defendant's plea to the jurisdiction being called to the attention of the court, and charges asked upon the subject of the proving the venue to have been in Maverick County, and the silence of the record as to any transfer of the cause to this court, the court permitted the district attorney to call J. L. Martin, the clerk of the court, to the stand, and interrogated him as to there having been a transcript from the District Court of Maverick County in this cause on file in his office ; to which the defendant's counsel objected, for the reason that it was not the best evidence, was hearsay, and that this could not be made the record in this case.    He, the said

Martin, testified that he had seen the transcript among the papers of the cause, and knew it was filed, but knew neither what were its contents nor what the certificate was to it.  No further evidence on the subject being introduced, the court refused to rule on the plea to the jurisdiction, or to submit the same to the jury in accordance with the charge asked by defendant; to each and every one of which said rulings and failure to act, defendant's counsel objected, and tenders this bill of exceptions," etc.

The other bill of exceptions referred to is in these words : "The district attorney proposed to prove by his honor, Judge T. M. Paschal, that the order had been made changing the venue, and proposed for his honor to be sworn. Defendant here interposed his objection.  His honor then stated he did not think it was necessary for him to be sworn; it was a fact which he judicially knew.  To which the defendant objected, for the reason that the unsworn testimony of the judge, and his statements from the bench, went to disprove defendant's plea to the jurisdiction, and became evidence in the cause.  To all of which defendant, by counsel, excepted," etc.  In explanation, before signing this bill, the judge adds that he " stated that he judicially knew that, as judge, he had made the order changing the venue."

We are of opinion that the court erred in its rulings.  In the present attitude of the record, there being nothing to discover the fact, we cannot determine whether the motion to change the venue, if any such was made, was at the instance of the State or at that of defendant.  This, however, is immaterial, since the third section of the " act to provide for the change of venue by the State in criminal cases" expressly provides that, " in all cases where the venue shall be changed under the provisions of this act, the same orders shall be made, and the same proceedings had, and the same duties be performed on the part of the clerks and sheriffs as are required by the Code of Criminal Pro-

cedure in cases where a change of venue is made on the application of the accused." Gen. Laws 15th Leg. 274. Turning to the Code of Criminal Procedure, we find that it provides that, " when an order for a change of venue has been made, the clerk of the court where the prosecution is pending shall make out a true transcript of all the orders made in the cause, and shall transmit the same to the proper county, and shall send the original papers also with the transcript." Pasc. Dig., art. 3000.

An order granting a change of venue, like all other orders and judgments in a case, is entered of record in the minutes of the court where the action is pending at the time. Proof of the order or judgment is the original, or a copy. Our statute provides that " copies of the records of all public officers and courts of this State, certified to under the hand and seal (if there be one) of the lawful possessors of such records, shall be admitted in evidence in all cases where the records themselves would be admissible." Pasc. Dig., art. 3715. This is the best evidence, and until it is shown that such evidence cannot be had, secondary evidence or parol evidence cannot be resorted to. 1 Greenl. on Ev., sect. 504.

Had parol evidence been admissible to prove that the venue had been regularly and properly changed, it would still have been error for the judge to have testified to the fact without being sworn as a witness. " The judge of the court trying an offence is a competent witness for either the State or defendant, and may be sworn upon the trial. But in such case it is in his discretion to order the trial to be postponed, and to take place before some other judge." Pasc. Dig., art. 3115.

" When it is proposed to offer the testimony of a judge in a cause pending before him, he is not required to testify if he declares that there is no fact within his knowledge important in the cause." Pasc. Dig., art. 3116. " When the judge of a court is offered as a witness, the oath may be

administered to him by the clerk." Pasc. Dig., art. 3117.

We do not propose to discuss the errors complained of in the motions for a new trial and in arrest of judgment, because these motions appear to have been made and filed more than two days after return of verdict, and no cause was assigned for the delay. Pasc. Dig., arts. 3136, 3141, 3142.

For the errors which we have noticed above, the judgment will be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*